## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Ali J.,[1]

          Plaintiff,

v.

Martin J. O'Malley,
*Commissioner of Social Security*,

          Defendant.

Case No. 23-cv-910 (KMM/DJF)

**REPORT AND
RECOMMENDATION**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ali J. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his applications for Child's Disability Benefits ("CDB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Because substantial evidence supports the Decision, the Court recommends Plaintiff's request for relief (ECF No. 13) be denied, Defendant's request for relief (ECF No. 15) be granted, the Decision be affirmed, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

# BACKGROUND

## I.    Plaintiff's Claim

Plaintiff applied for CDB and SSI on May 3, 2018.  (Soc. Sec. Admin. R. (hereinafter "R.") 348-358.)[2]  At that time he was a 38-year-old man with three years of college and past work experience as camera operator, data entry person, personal care attendant, and reservation clerk. (R. 396.)  Plaintiff alleged he became disabled on March 20, 2002, just prior to his twenty-second birthday (R. 348), resulting from schizophrenia, autism, depression, and anxiety (R. 395).[3]

## II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

---

[2] The Social Security administrative record (R.) is filed at ECF No. 8.  For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

[3] To be entitled to CDB, a claimant must have a disability that began before he attained the age of twenty-two.  42 U.S.C. § 402(d)(1)(B).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish he is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving he cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform other work existing in a significant number of jobs in the national economy, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III.   Procedural History

The Commissioner denied Plaintiff's applications for CDB and SSI initially (R. 109-136) and on reconsideration (R. 140-165). On April 12, 2022, at Plaintiff's request (*see* R. 184), an

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications (R. 43-77). Plaintiff and a vocational expert testified at the hearing. (R. 44.) Plaintiff was represented by an attorney. (R. 43.) After the hearing, the ALJ considered whether Plaintiff was disabled between March 20, 2002, the alleged onset date of his disability, and June 1, 2022, the date of the ALJ's Decision. (R. 14- 34.)

The ALJ determined that Plaintiff has: (1) non-severe degenerative disc disorder of the lumbar spine and left corneal abrasion (R. 18); and (2) multiple physical and mental impairments, which at least in combination are severe: pes planus; obstructive sleep apnea; coronary artery disease with aortic regurgitation and aortic dilation; hypertension; psoriasis; obesity; major depressive disorder, recurrent with psychotic features; adjustment disorder with mixed emotions and conduct; autism spectrum disorder; and paranoid schizophrenia. (R. 17-18). The ALJ found that while Plaintiff has a mild limitation in interacting with others, and moderate limitations in: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing himself, Plaintiff's mental limitations do not severely limit any area of broad functioning. (R. 20-21.) The ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing. (R. 18-22.) The ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 23-31) and determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he may never climb ladders, ropes, or scaffolds; and may frequently, as opposed to constantly, stoop, crouch, crawl, kneel, and climb ramps or stairs. Claimant may occasionally use foot pedals; and may only occasionally work at extremes of heat, cold, or with exposure to wetness. Claimant may do no work at unprotected heights or with dangerous moving machinery. Claimant can understand, remember, and apply information to perform simple tasks

and make simple decisions; is able to focus on and complete simple tasks timely;
and can adapt to occasional changes in workplace routines.

(R. 22-23.)  Next, the ALJ determined Plaintiff has past relevant work experience as a personal care attendant (Dictionary of Occupational Titles ("DOT") #354.377-014)), described as semiskilled work with a specific vocational preparation ("SVP") of 3, which is generally and actually performed at a medium exertional level (R. 31).  The ALJ determined that since the demands of this job exceed Plaintiff's RFC, he is unable to perform past relevant work.  (R. 31-32.)

The ALJ then evaluated whether Plaintiff is able to perform other jobs that exist in significant numbers in the national economy.  (R. 32-33.)  Based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is able to perform such other jobs, including: "building cleaner" (DOT #323.687-014, light and unskilled work with an SVP of 2 and approximately 65,000 jobs in the national economy); "mail clerk" (DOT #209.687-026, light and unskilled work with an SVP of 2 and approximately 45,000 jobs in the national economy); and "marking clerk" (DOT #209.587-034, with an SVP of 2 and approximately 14,000 jobs in the national economy).  (R. 33.)  The ALJ concluded on that basis that Plaintiff is not disabled.  (R. 33-34.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-7), and this lawsuit followed.

## DISCUSSION

### I.    Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high."  *Id*.  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision."  *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review).  At minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates.  She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.  "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (TNL), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.    Analysis

Plaintiff asserts a number of arguments, largely challenging the ALJ's RFC determination.  RFC is defined as the most a claimant can do despite his limitations.  20 C.F.R. § 404.1545(a).  It is the claimant's burden to prove his functional limitations related to his RFC.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004).  The ALJ

bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000).

The ALJ in this case cited extensive evidence related to Plaintiff's treatment history, mental status examinations, and daily living to support her RFC determination. (*See, e.g.,* R. 23-27.)  The ALJ specifically observed: (1) in January 2008, Plaintiff presented as depressed an anxious, but was also cooperative, appropriate, well-groomed, logical, and with intact memory and concentration (R. 24, citing R. 534-535); (2) in 2009, Dr. Robert Lopno noted that Plaintiff was constricted and depressed with diminished concentration, but was "alert and fully oriented in all spheres of awareness," appropriately groomed, cooperative and logical, with intact memory and cognition, and with appropriate insight and judgment" (R. 24, citing 577); (3) in 2011, Plaintiff presented with a blunted mood and affect but intact hygiene, logical thought processes, fair judgment and insight, and intact concentration, and was responding reasonably well to medication (R. 24, citing 580-581, 584-585); (4) in 2016, Plaintiff "presented as fidgety and anxious; but had organized thought processes, intact judgment, overall intact concentration, normal cognition and memory, and was cooperative" and continued to take medication (R. 24, citing 591-592); (5) in January 2017, Plaintiff reported his Depression was "well-controlled" (R. 25, citing R. 820); (6) later in 2017, Plaintiff presented with blunted affect, but had organized thought processes, intact judgment, overall intact concentration, normal cognition and memory, and was cooperative and continued to take medication (R. 25, citing R. 709, 711, 715); (7) in December 2017, Dr. Yael Rubin assessed Plaintiff for autism and determined Plaintiff had a full scale IQ of 81, with slow processing and issues with nonverbal communication, but Plaintiff also demonstrated appropriate

concentration, logical and organized thought processes, cooperative demeanor, and intact hygiene, was willing to participate in and show motivation during testing, and was polite and quiet with appropriate attention and no signs of disordered thinking (R. 25, citing R. 723, 724, 726); (8) in February 2018, Plaintiff was anxious but responded appropriately at a genetic consultation (R. 25, citing R. 760-761); (9) in March 2018, Plaintiff had no issues writing, communicating, understanding, remembering, concentrating, or interacting (R. 25, citing R. 392); (10) in October 2018, Plaintiff's provider reported he was "doing well" and that although he presented with blunted affect, he demonstrated "intact concentration and memory, appropriate hygiene, cooperative behavior, and logical thought processes" and continued to take medication (R. 25, citing R. 703); (11) in October 2019, Plaintiff again presented with blunt affect, but also demonstrated intact memory, normal concentration, appropriate hygiene, logical thought processes, good insight and judgment, and appropriate and cooperative demeanor, and continued to take medication (R. 26, citing 893); (12) in February 2020, Plaintiff reported he was seeing a therapist monthly, was feeling much better, and his mood was stabilized (R. 26, citing R. 946); (13) in 2022, Plaintiff's psychological testing with Dr. Rubin showed Plaintiff struggled with socializing, had issues with communication, engaged in some repetitive behaviors, had difficulty with frustration tolerance, struggled with task completion, and had sensory issues, but Plaintiff was also cooperative, polite and friendly, with intact concentration and logical speech and thought processes (R. 27, citing R. 1488); and (14) Plaintiff's daily living activities included caring for his basic personal hygiene, preparing simple foods, doing some housework, reading, obtaining acting and filmmaking certifications, watching television and movies, doing physical exercise such as yoga and jogging, going online, going shopping occasionally, going to concerts occasionally

during the period under adjudication, and going to restaurants and to movies with his mother and brother (R. 28, citing R. 52, 69).

Plaintiff contends the ALJ erred as a matter of law when she: (1) failed to adequately evaluate the supportability and consistency of all of Plaintiff's psychiatric medical opinions; (2) mischaracterized Dr. Yael Rubin's medical opinion; (3) failed to properly account for Plaintiff's moderate limitations in concentration, persistence, and pace; (4) failed to consider a medical report containing vocational service information from a third-party source; and (5) as a result of Plaintiff's flawed RFC, presented a flawed hypothetical to the vocational expert that failed to incorporate with precision all of Plaintiff's functional limitations. (ECF No. 13 at 9-30; *see also* ECF No. 16 at 1-8.) Plaintiff argues each of these alleged errors provides an independent basis to either reverse the ALJ's Decision or remand this matter for further proceedings. (ECF No. 13 at 30.) Defendant asks the Court to affirm the Decision on the grounds that the ALJ applied proper legal standards and that substantial evidence supports her findings. (ECF No. 15 at 21.)

      1.      **The ALJ's Evaluation of Medical Opinions**

Plaintiff argues the ALJ committed reversible error by improperly evaluating Dr. Robert Lopno, Dr. Cynthia Crandall, Dr. Kari Kennedy, and Dr. Yael Rubin's medical opinions. (ECF No. 13 at 10-14; *see also* ECF No. 16 at 1-5.) He claims the ALJ: (1) failed to appropriately evaluate the supportability and consistency of these opinions as required by 20 C.F.R. § 404.1520c; and (2) did not provide a legally valid basis for rejecting the opinions as only mildly persuasive or unpersuasive. (ECFN No. 13 at 10-14.) He claims the ALJ used "boilerplate" and "conclusory" language to evaluate each opinion without providing any actual indication how she evaluated their supportability, consistency, or persuasiveness. (*Id.* at 10-13.) Plaintiff also contends the ALJ wrongly overlooked evidence in the opinions that supported a more restrictive

RFC.  (ECF No. 16 at 1-5.)  Plaintiff argues the error was not harmless because the four medical opinions contained work-preclusive limitations related to Plaintiff's ability to interact with others that the ALJ did not account for in Plaintiff's RFC.  (ECF No. 13 at 14.)

Under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources.  20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)) ("treating physicians are [no longer] entitled to special deference").  When evaluating the persuasiveness of any medical opinion or prior administrative finding, an ALJ instead must consider: (1) whether it is supported by objective medical evidence; (2) whether it is consistent with other medical sources; (3) the source's relationship with the claimant; (4) the source's specialization; and (5) any other relevant factors.  *Bowers*, 40 F.4th at 875 (citing 20 C.F.R. § 404.1520c(c)).  The first two factors—supportability and consistency—are the most important, and the ALJ generally need only explain how she considered those two factors.  20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2).

"Supportability" addresses the extent to which the medical source offering the opinion or prior administrative medical finding cites objective medical evidence and supporting explanations. 20 C.F.R. § 404.1520c(c)(1).  "Consistency" addresses the extent to which the opinion or prior administrative medical finding is consistent with the other record evidence from other medical and non-medical sources.  20 C.F.R. § 404.1520c(c)(2).  An ALJ need not use "supportability" and "consistency" as magic words, "but it must be clear that they were addressed."  *Kelly L. R. v. O'Malley*, Civ. No. 22-2952 (JFD), 2024 WL 10958887, at *4 (D. Minn. Mar. 1, 2024) (quoting *Svendsen v. Kijakazi*, Civ. No. 1:21-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022)).  "An ALJ's reasoning need only be clear enough to allow for appropriate judicial review."  *Grindley*

*v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021).

In relevant part, Dr. Lopno opined that Plaintiff can respond appropriately to brief and superficial contact with co-workers and supervisors. (R. 577.) But the ALJ determined Dr. Lopno's medical opinion was only mildly persuasive because:

> it is largely inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status findings, and the claimant's reported activities of daily living. The evidence supports a finding that the claimant is capable of simple and routine tasks with adaptation and pace limitations associated with his mental impairments, but also that claimant has no more than mild limitation in interaction given consistently polite and cooperative demeanor … Moreover, this opinion is also very remote in time and as such, provides only limited insight into the claimant's function-by-function capacity.

(R. 29.)

The state agency psychological consultant, Dr. Crandall, similarly opined that Plaintiff had a mild limitation in interacting with others, as well as a mild limitation adapting or managing himself, a marked limitation in understanding, remembering, or applying information, and a marked limitation concentrating, persisting, or maintaining pace. (R. 160.) She concluded:

> Claimant has a documented history of a serious and persistent mental illness with a diagnosis of paranoid schizophrenia as far back as 2/2016 and a history of possible psychotic symptoms as early as 2008. Claimant has never lived independently and has minimal to no work experience in the last several years. Even with treatment with medications and psychotherapy, his adjustment is marginal and he would not be able to handle the stress of fulltime employment without significant decompensation.

(R. 160.) The ALJ explained she was not persuaded by Dr. Crandall's opinion because:

> it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living. The evidence supports a finding that the claimant experiences moderate limitations in several areas, but that he is capable of simple and routine tasks …. The claimant's longitudinal treatment history does not support the extent of limitation as found by Dr. Crandall given documented improvements with medications and other treatments. Dr. Crandall did not have the benefit of a fully updated medical record

in formulating her opinion.

(R. 30).

Dr. Kennedy opined that Plaintiff experienced moderate limitations in understanding, remembering, or applying information and in interaction; and mild limitations in concentrating, persisting, and maintaining pace and in adaptation. (R. 117.) Dr. Kennedy further opined Plaintiff could:

> understand, carry out and remember simple instructions[;] [is] able to make judgments commensurate with functions of simple, repetitive tasks; [is] able to respond appropriately to brief supervision and interactions with coworkers and work situations; [and is] able to deal with changes in a routine work setting.

(R. 119.) The ALJ explained she was only mildly persuaded by Dr. Kennedy's opinion because:

> although some of the findings are supported by the record, it is largely inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living. The claimant's longitudinal treatment history supports a finding that the claimant is capable of simple and routine tasks with adaptation and pace limitations associated with his mental impairments, but also that claimant has no more than mild limitation in interaction given consistently polite and cooperative demeanor.

(R. 29.)

Finally, Dr. Rubin opined that Plaintiff experienced marked limitations in interacting appropriately with the public, supervisors, and coworkers, and in responding to changes in a routing work setting; and extreme limitations in responding to work pressures in a usual work setting. (R. 732.) He similarly opined that Plaintiff is moderately limited in his ability to understand short, simple instructions; markedly limited in his ability to carry out short, simple instructions and understand and remember detailed instructions; and extremely limited in his ability to carry out detailed instructions and make judgments on simple work-related instructions. (R. 741.) Dr. Rubin stated Plaintiff "is functioning at a very low level of interpersonal

communication," and "[i]interacting in public is difficult for him, and he becomes shy, rigid and withdrawn." (R. 735.) He further opined: (1) "[w]hen put into situations that involve interactions with others and some work tasks, [Plaintiff] has difficulty remembering simple instructions"; (2) Plaintiff "is not capable of living independently"; (3) Plaintiff has "functional limitations that will affect his ability to work" (R. 735); (4) Plaintiff is "significantly impaired intellectually and has substantial adaptive living skill deficits, including self-management in personal care" (R. 741); and (5) Plaintiff "could not manage a job with a job coach, and in my opinion he could not manage the length of time for training, nor be able to learn adequate job skills, make appropriate judgments, nor be able to the acquire skills for satisfactory work performance" (R. 1497).

The ALJ disagreed. She explained she was not persuaded by Dr. Rubin's opinions because she found them "inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living." (R. 30.) She further explained:

> The evidence does not support this extent of limitations given medical evidence demonstrating largely mild to moderate mental status examination findings and documented improvements with treatment and medications. … The claimant's longitudinal treatment history supports moderate limitations in several areas but that he is capable of simple and routine tasks. Findings of this marked to extreme limitations are inconsistent with often unremarkable clinical findings, including some of Dr. Rubin's own findings. Such inconsistencies suggest that Dr. Rubin relied quite heavily on the claimant's subjective report of symptoms and limitations, and that he may have uncritically accepted as true most, if not all, of what the claimant reported. Yet, as explained above, there exist good reasons for questioning the consistency of the claimant's subjective complaints.

(R. 30.)

Having carefully reviewed the ALJ's entire Decision, the Court finds the ALJ properly evaluated each medical opinion, including properly explaining the supportability and consistency factors under 20 C.F.R. § 404.1520c and the extent to which she found each opinion persuasive.

The Court also finds substantial evidence supports the ALJ's findings.  The ALJ explained Dr. Lopno's opinion was inconsistent with the record as a whole—specifically noting Plaintiff's "consistently polite and cooperate demeanor"—and that the opinion was very "remote in time." (R. 29.)  The ALJ similarly explained Dr. Crandall's opinion was inconsistent with the record as a whole, including Plaintiff's history of treatment and medications, mental status examination findings, and reported activities of daily living, and observed that "Dr. Crandall did not have the benefit of a fully updated medical record in formulating her opinion."  (R. 30.)  The ALJ also appropriately explained that she did not find evidence to support the extent of the limitations Dr. Kennedy opined were necessary.  (R. 29.)  She cited Plaintiff's longitudinal treatment history in concluding he has no more than mild limitation in interaction "given consistently polite and cooperative demeanor."  (R. 30.)  The ALJ similarly explained Dr. Rubin's opinion was inconsistent and unsupported by the record, noting that he may have wrongly relied on Plaintiff's own subjective complaints, which the ALJ did not find convincing.  (R. 30.)

    Read it its entirety, the Decision belies any notion that the ALJ relied on "boilerplate" or "conclusory" language to evaluate each opinion, and her evaluation of each opinion is sufficiently clear to allow for meaningful judicial review.  *Grindley*, 9 F.4th at 631.  As detailed above, the ALJ cited myriad portions of the record evidence related to Plaintiff's treatment history, medication, mental status examination findings, and daily living activities to support her RFC determination, and she appropriately relied on that evidence to explain why she found the medical opinions inconsistent with or unsupported by the record.  Plaintiff contends the opinions showed the ALJ should have included a limitation related to social interaction in his RFC, but the ALJ cited multiple examples of Plaintiff demonstrating polite and cooperative behavior, such that she did not find such a limitation warranted.  (*See* R. 23-27, citing *e.g.*, R. 534-535, 577, 580-581, 591-

592, 709, 711, 723.)  Plaintiff and the identified sources plainly disagreed with the ALJ's findings, but such disagreement does not alter the fact that the ALJ properly evaluated the opinions as required under 20 C.F.R. 404 § 404.1520c.  Having found that the ALJ properly applied the relevant criteria, the Court is not free to insert its own judgment into the analysis.  *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence").

Further, insofar as Plaintiff argues the ALJ overlooked certain evidence cited in the opinions (*see* ECF No. 16 at 1-4), the Eighth Circuit has rejected this argument and explained that the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision."  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Court must affirm the decision.  *Chesser v. Berryhill*, 858 F.3d 1161,1164 (8th Cir. 2017); *see also Nash v. Comm'r*, 907 F.3d 1086, 1089 (8th Cir. 2018) ("If substantial evidence supports the Commissioner's conclusions, [the] Court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.") (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)).  Here, the Court finds the ALJ properly considered the relevant evidence and that substantial evidence supports her RFC determination.

### 2.    The ALJ's Characterization of Dr. Yael Rubin's Medical Opinion

Plaintiff argues the ALJ also erred by mischaracterizing Dr. Rubin's opinion related to his vocational activities.  (ECF No.  13 at 16-18; *see also* ECF No. 16 at 5-6.)  He claims the ALJ improperly wrote in her Decision that Dr. Rubin said Plaintiff is "unable to handle vocational

training [and] could not manage time for training" (ECF No. 13 at 16, citing R. 30), when in actuality, Dr. Rubin opined that Plaintiff "could not manage a job with a job coach, and … could not manage the length of time for training, nor be able to learn adequate job skills, make appropriate judgments, nor be able to acquire skills for satisfy work performance" (*id.*, citing R. 1497). Plaintiff contends the ALJ wrongly interpreted Dr. Rubin's statement to mean that Plaintiff could not fit training into his busy schedule of activities; when Dr. Rubin actually meant that Plaintiff could not manage the "amount of time" required for training. (*Id.* at 17-18.) Plaintiff argues that if the ALJ had properly characterized Dr. Rubin's statement, the ALJ may have found Dr. Rubin's opinion regarding his "marked" limitations more persuasive, and thus included stricter mental limitations in Plaintiff's RFC and concluded Plaintiff is not able to perform any job. (*Id.*)

Plaintiff's speculation that the ALJ may have improperly interpreted Dr. Rubin's opinion related to his vocational activities does not support a conclusion that the ALJ erred. As previously discussed, the ALJ clearly explained she found Dr. Rubin's opinion unpersuasive because Plaintiff's longitudinal treatment history showed he is capable of simple and routine tasks, and because Dr. Rubin's conclusions were inconsistent with the "often unremarkable clinical findings," including some from Dr. Rubin himself. (R. 30.) Importantly, the ALJ also limited Plaintiff to unskilled work, which is less demanding than his previous semiskilled past relevant work. (R. 31-33.) An unskilled job is one that usually can be learned in thirty days, and "little specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568 (a), 416.968 (a). Therefore, Plaintiff has not established that any different interpretation of Dr. Rubin's findings would have altered the ALJ's ultimate disability determination. The Court thus cannot find reversible error based on the ALJ's interpretation of Dr. Rubin's opinion.

16

### 3.        Plaintiff's Limitation in Concentration, Persistence, and Pace

Plaintiff next argues the ALJ erred by failing to account for his moderate limitation in concentration, persistence, and pace because his RFC includes language that is different than the language he claims previous case precedents have required on the same legal issue. (ECF No. 13 at 18-22, citing *Salkic v. Saul*, Case No. 4:18CV1901 (HEA), 2020 WL 805868 (E.D. Mo. Feb. 18, 2020); *see also* ECF No. 16 at 6.)

In relevant part, Plaintiff's RFC provides that Plaintiff "can understand, remember, and apply information to perform simple tasks and make simple decisions; is able to focus on and complete simple tasks timely; and can adapt to occasional changes in workplace routines." (R. 23.) Plaintiff contends the ALJ erroneously included in his RFC that he is able to "focus" and complete tasks "timely," which is not synonymous with "simple and routine" tasks, and thus does not properly account for his moderate limitation in concentration, persistence, and pace. (ECF No.13 at 20-21.) Plaintiff argues the ALJ's inclusion of this added language constitutes reversible error because it does not restrict him to work tasks that are substantially similar to "simple and routine," thus affecting the jobs the vocational expert identified he could perform. (*Id.* at 22.)

The Court declines Plaintiff's invitation to impose on the agency a requirement that RFC determinations be cookie-cutter duplicates whenever similar limitations apply.  RFC is an individualized determination and should accurately reflect the evidence in the record in each case. Thus, the ALJ was not required to adopt an RFC that was identical to any other case.  20 C.F.R. § 404.1545(a)(3).  Moreover, the addition of language recognizing that Plaintiff is able to "focus" and complete simple tasks "timely" does not change the determination that Plaintiff is limited to simple and routine tasks.  (*See* Programs Operations Manual DI 25020.010(d)(3), listing the basic mental demands of unskilled work including understanding, carrying out, and remembering simple

instructions, and maintaining attention for extended periods of 2-hour segments.)  Because unskilled work requires at least some focus and timely completion of tasks, these terms do not undercut the essential restriction to "simple tasks" and "simple decisions," which the ALJ included to accommodate Plaintiff's moderate limitation in concentration, persistence, and pace.

### 4.    The ALJ's Consideration of the Record Evidence

Plaintiff argues the ALJ also erred by failing to consider information from a third-party source when determining Plaintiff's RFC.  (ECF No 13 at 28-30; *see also* ECF No. 16 at 7-8.)  Plaintiff specifically contends the ALJ overlooked vocational service reports for career consulting services provided to Plaintiff by an organization called Kaposia, which Dr. Rubin summarized in one of his reports.  (ECF No. 13 at 28; *see also* ECF No. 16 at 7.)

Dr. Rubin summarized Plaintiff's vocational history in a report prepared for Plaintiff's counsel dated March 19, 2022 ("Vocational Summary") (R. 1495-1497).  The Vocational Summary recounted Plaintiff's various job experiences, including quitting one job and not being hired for another, and included a note stating Plaintiff should not participate in janitorial or cleaning jobs.  (R. 1495-1497.)  The Vocational Summary further referred to Plaintiff working with a job coach.[5]  (R. 1496-1497.)  At the conclusion of the Vocational Summary, Dr. Rubin opined that Plaintiff was unable to handle vocational training and could not make appropriate judgments or acquire skills.  (R. 1497.)

The vocational service reports provided by Kaposia described the scope of services Kaposia intended to provide Plaintiff, including assisting him with finding meaningful employment and transportation, coordinating his on-the-job training, and providing ongoing

---

[5] Presumably this is a reference to Kaposia, though Dr. Rubin's summary does not identify that organization by name.  (*See* R. 1495-1497.)

support on the job to ensure job satisfaction and retention. (R. 898, 904.) The service reports also explained Plaintiff's job support preferences, including his need for staff to provide clear and concise verbal instructions and demonstrate new tasks before he is asked to complete them. (R. 898, 905.)

Plaintiff contends the ALJ's only reference to his vocational training in her Decision is the ALJ's statement that he is "unable to handle vocational training." (ECF No. 13 at 29.) He states, "the ALJ considered neither the opinion of Dr. Rubin, nor the information from Kaposia summarized by Dr. Rubin." (*Id.* at 30.) He similarly contends the ALJ did not consider the "actual [service] reports from the third-party source Kaposia." (ECF No. 16 at 7.) Plaintiff argues the ALJ "gave no reason why" she did not consider his "two years of coordinated vocational services" even though "the record also contained two Kaposia [service] plans" that explained Kaposia's services. (ECF No. 13 at 30.) Plaintiff cites various parts of Dr. Rubin's Vocational Summary to support his argument that if the ALJ had properly considered this information, it would have affected the questions she posed to the vocational expert, and ultimately, the jobs she determined Plaintiff is able to perform. (*Id.* at 30-31.)

As previously discussed, the ALJ specifically cited Dr. Rubin's opinion related to Plaintiff's vocational training in her Decision. (R. 30.) She also clearly explained why she found the opinion unpersuasive. (R. 30.) The Decision therefore belies any notion that the ALJ failed to consider Dr. Rubin's opinion, or the vocational history information summarized therein. Moreover, to the extent Plaintiff claims the ALJ overlooked the Kaposia service reports because the Decision does not explicitly refer to them, "an ALJ is not required to discuss every piece of evidence submitted" so long as she develops the record fully and fairly. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). And an

19

"ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).  Furthermore, Plaintiff fails to explain how any portion of the Kaposia service reports could have led to a different outcome.  The Kaposia service reports Plaintiff cites in his briefing do not appear to support either the conclusion that he is unable to work in jobs existing in the national economy or that the ALJ excluded any particular restriction from his RFC that should have been included.  (*See* R. 898-R. 909.)  Instead, these reports are plans to provide future services, which indicate Plaintiff has demonstrated the ability to work with appropriate support and training, including clear and concise verbal instructions and demonstrations of new tasks.  (R. 905.)

Having carefully reviewed the ALJ's Decision, the Court finds she properly considered Plaintiff's vocational history and training and appropriately developed the record accordingly. Plaintiff's suggestion that the ALJ failed to consider his vocational history, and his speculation that such consideration would have caused her to pose different questions to the vocational expert, are not supported by the evidence.  For these reasons, the Court cannot conclude that the ALJ erred by failing to fully consider the record.

### 5.    The Hypothetical Questions Posed to the Vocational Expert

Finally, Plaintiff argues that ALJ's findings at step five are not supported because the ALJ's hypothetical questions to the VE were based on an RFC that did not include: (1) the correct "simple and routine" restriction for Plaintiff's moderate limitation in concentration, persistence, and pace; or (2) any restriction related to social interactions.  (ECF No. 13 at 24-27; *see also* ECF No. 16 at 6-7.)

During Plaintiff's hearing, the ALJ asked the vocational expert whether a hypothetical person with Plaintiff's RFC could perform any jobs that exist in the national economy.  (R. 72.)

The vocational expert testified that Plaintiff could perform work as a: "building cleaner" (DOT #323.687-014, with approximately 65,000 jobs in the national economy); a "marking clerk" (DOT #209.587-034, with approximately 14,000 jobs in the national economy); and "mail clerk" (DOT #209.687-026, with approximately 45,000 jobs in the national economy).  (R. 72-73.)

At step five of the sequential analysis, the ALJ may rely on a vocational expert's testimony to meet her burden of proof to show that jobs exist in the national economy that a claimant can perform.  *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997).  To constitute substantial evidence, the vocational expert's testimony must be "based on a hypothetical [question] that captures the concrete consequences of the claimant's deficiencies."  *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quotation marks and citation omitted).  The hypothetical need include only those impairments that the ALJ has found are substantially supported by the record as a whole.  *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996).

For the reasons previously discussed, the record does not compel a finding that Plaintiff was more limited than the ALJ's already restrictive RFC determination.  The ALJ appropriately included in the hypothetical she posed to the vocational expert only those limitations she found to be supported by the evidence as a whole.  The vocational expert identified three jobs existing in significant numbers in the national economy that Plaintiff can perform despite his impairments and resulting limitations.  (R. 71-72.)  The Court therefore cannot conclude that the ALJ erred at step five.  Because there is substantial evidence to support the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers in the national economy, the Court recommends affirming it.  *Perks*, 687 F.3d at 1091.

Having considered Plaintiff's arguments and reviewed the evidence he cites to support his claims, the Court finds no basis to vacate the ALJ's Decision or remand this matter for further

proceedings.   Rather, the ALJ appropriately considered the record and substantial evidence supports her Decision.   For these reasons, the Court recommends Plaintiff's request for relief be denied, Defendant's request for relief be granted, the Decision be affirmed, and this matter be dismissed with prejudice.

### REPORT AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.    Plaintiff's Request for Relief (ECF No. [13]) be **DENIED**;

2.    Defendant's Request for Relief (ECF No. [15]) be **GRANTED**;

3.    The Decision be **AFFIRMED**; and

4.    Plaintiff's Complaint (ECF No. [1]) be **DISMISSED WITH PREJUDICE**.

Dated:  May 2, 2024                                  _s/ Dulce J. Foster_____
                                                                    DULCE J. FOSTER
                                                                    United States Magistrate Judge

### <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).